UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:04CV-13-R

ROY L. ADAMS, SR., Individually,
and ADAMS MOTOR SALES, INC.                                                      PLAINTIFFS

v.

WESTFIELD INSURANCE COMPANY                                                      DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket # 21).  The Plaintiffs have responded (Docket #36), and the Defendant has replied to their response (Docket # 44).  This matter is now ripe for adjudication.  For the reasons that follow, the Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.**

## BACKGROUND

On November 13, 2002, Plaintiff Roy L. Adams, Sr. ("Adams") was operating a motor home (recreational vehicle or "RV")  he had purchased for use in his small corporation, Adams Motor Sales, Inc. ("Adams Motor"), which was involved in a car accident.  Adams is the sole shareholder of his corporation.  At the time of the accident Adams was insured through his local independent insurance agent by Westfield Insurance Company ("Westfield"), the Defendant in this action.  Adams had a policy limit for $200,000.00.  The purpose of the trip on November 13, 2002 was personal, not business related.  Subsequent to the accident it was eventually determined that Adams was not at fault, after the Donan Engineering firm performed a review.

Westfield assigned the case to its adjuster James Cox ("Cox") who informed Adams that he should take his RV to Basden's American RV ("Basden's") in Evansville, Indiana for a

damages estimate. Basden's was unable to provide an estimate to Adams, and informed him that he would need to take the RV to the manufacturer or factory authorized center. Cox asked Adams to take the vehicle to Georgie Boy's manufacturing center in Edwardsburg, Illinois. At that time, Cox then assigned the case to Westfield Material Damage Specialist Leon Daunhauer ("Daunhauer").

The first estimate provided by Georgie Boy's in December 2002 was for $48,647.97. Georgie Boy refused to do the repair work because they could not repair the RV to the satisfaction of Adams; however, Frank Long ("Long") of Georgie Boy admitted that he was unfamiliar with that particular RV and did not know the condition of it before the wreck. At that time Cox alleges he made an offer to pay Adams $48,000. The offer was never put in writing and Adams denies that such an offer was ever made.

In January, 2003, Cox reassigned the matter to Rick Frye ("Frye"), who was another Material Damage Specialist for Westfield. Adams has testified that when Frye came to examine the RV in January 2003, Frye barely examined the vehicle, took no pictures or inquired into other offers made for the RV. Frye then called Long at Georgie Boy, and Long told Frye that he felt that not all the damage sustained by the RV was as a result of the accident. After that communication a second estimate was done by Long, this time at $15,195.46. Long testified that he would not repair the RV for the estimated amount. Adams asserts that the second estimate was the basis of the only offer ever made to Adams by Westfield, which Adams refused. Westfield also issued a subsequent check in the amount of $1,765.76 in addition to the check for $15,195.46, both of which were rejected by Adams. In addition, Cox secured two more estimates for the RV, at $58,000.00 and $61,000.00, respectively, though Adams asserts that Cox

never responded to those estimates.

After Adams refused the offer by Westfield, Brian Haynes, (the original attorney for Adams) and Cox discussed the possibility of using the appraisal/umpire procedure contained within the policy, which Adams did not approve of. However, Haynes invoked the appraisal process in May 2003 in a letter to Cox, and Cox responded that same month in a letter agreeing to appraise and identifying their appraiser. Haynes did not respond or contact Cox after that initial contact until July 2003, when he said he would get in touch with Adams, however, no further communications between the parties took place until the Plaintiffs filed suit 5 months later. The complaint outlines claims against Westfield for: violations of the Kentucky Consumer Protection Act and the Unfair Claims Settlement Practices Act; breach of contract; breach of fiduciary duty; and bad faith by Westfield. In their motion for summary judgment (Docket # 21) Westfield asserts: that Adams as an individual is not a proper party to the action; that the insurance policy issued by Westfield to Adams is commercial, and therefore cannot be covered by the Consumer Protection Act; and that the evidence does not support an Unfair Claims Settlement Practices Act claim. In his response (Docket #36), Plaintiff counters these arguments.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences

against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**ARGUMENTS**

*Is Roy Adams, Sr. a proper party to this action?*

The Defendant argues that Roy Adams, Sr., as an individual, is not a proper party to this action. Under the Kentucky Unfair Claims Settlement Practices Act (KRS 304.12-230; KRS 446.070), a private citizen insured under the policy can maintain an action against the insurer for

injuries sustained due to a violation of the act. *Curry v. Fireman's* Fund, 784 S.W.2d 176 (Ky. 1989); *State Farm Mutual Auto Ins. Co v. Reeder*, 763 S.W.2d 116, 117-118 (Ky. 1998); *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 268 (Ky. 2000). Westfield argues that because the policy covers Adams Motor and not Adams, Adams is not a proper party. The Plaintiff, in his responses, argues that Adams is the sole shareholder, officer and employee of the corporation. In addition, he has been the only person Westfield has dealt with in this matter. As such, Adams claims he is a person of the class intended to be protected by the statute. Adams offers definitions to support this finding including 806 KAR 12:095, which defines "claimant" as a "first party claimant, a third-party claimant, or both and includes the claimant's designated legal representative."

In the instant matter, Adams Motor Sales, Inc. is the named insured. Roy Adams, Sr. is only the shareholder, and as such he was the representative of the insured, Adams Motor Sales, Inc., but not on the actual policy. This is a first party claim by Adams Motor Sales, Inc. In his dealings with Westfield, Mr. Adams was acting as a representative of the corporation, not in his individual capacity. The class intended to be protected under the statute in this situation is the named insured. The class does not include the officers of the corporations, major shareholders, or attorneys representing the interests of the corporation or acting in their individual capacity on behalf of the corporation.

Therefore, this Court finds that Roy Adams, Sr. is not a proper party in this action.

### *Can the claims made constitute a violation of the Consumer Protection Act?*

The Defendant argues that because the insurance policy is a commercial policy there can be no claim for a violation of the Consumer Protection Act. The Consumer Protection Act, as

applicable to this matter, states: "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss...may bring an action under the Rules of Civil Procedure in Circuit Court." KRS 367.220. The Defendant asserts that because Adams purchased the policy of insurance for commercial purposes and not for personal, family or household uses, he does not have a private right of action under the act. In the case of *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, the Court found that in order to bring suit under the Consumer Protection Act, the parties must have a direct buyer and seller relationship to the item in question, stating "[t]he language of the statute plainly contemplates an action by a purchaser against his immediate seller...[t]he legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act." 836 S.W.2d 907, 909 (Ky. 1992). In addition to arguing this point, the Defendant also notes that the insurance expert for the Plaintiffs admitted that the insurance policy in question is a "standard commercial policy." (Docket #21 at 6). Here, no privity of contract exists between Adams and Westfield as to the RV, as the sale of the RV took place between Adams and the company where he purchased the vehicle, not Westfield. Therefore, the required relationship necessary to bring a claim under the Consumer Protection Act does not exist in the instant matter between the Plaintiffs and the Defendant.

      The Plaintiffs acknowledge the holding in *Skilcraft*, but nonetheless ask the Court to extend the reasoning of *Stevens v. Motorists Mutual Insurance Co.* to apply to small businesses. In *Stevens*, the Kentucky Supreme Court held that the actual purchase of the homeowners insurance policy itself was covered under the Consumer Protection Act when the insurance company had made misrepresentations as to the actual policy. *Stevens v. Motorists Mutual*

6

*Insurance Co.*, 759 S.W.2d 819, 821 (Ky. 1988). However, in the instant matter, the Plaintiffs do not allege that Westfield made any misrepresentations as to the insurance policy used to insure the RV, but rather challenge the manner in which Westfield went about settling the claim after the car accident. In looking at that factor, as well as the statutory and case law referenced *supra*, the Consumer Protection Act does not provide the Plaintiffs with a claim against Westfield.

Therefore, this Court finds that the Plaintiffs cannot bring a claim against the Defendant under the Kentucky Consumer Protection Act.

***Does the evidence support a claim that Westfield violated the Kentucky Unfair Claims and Settlement Practices Act (KUCSPA)?***

The Defendant asserts that no bad faith claim exists, arguing that the Plaintiffs lack evidence to establish a bad faith claim under the KUCSPA  In Kentucky, to prevail on a bad faith claim, the insured must prove that:

> The insurer must be obligated to pay the claim under the policy; the insurer must lack a reasonable basis in law or fact for denying the claim; and it must be shown that the insurer either knew that there was no reasonable basis for denying the claim or acted with a reckless disregard for whether such a basis existed.

*Kemper Insurance Co. v. Hornback*, 711 S.W.2d 844, 846-847 (Ky. 1986) (Leibson, J., dissenting). As applied to the KUCSPA, the Kentucky Court of Appeals in *Wittmer v. Jones*, quoting the Restatement 2d of Torts, determined that:

> Before the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages: "The essence of the question as to whether the dispute is merely contractual or whether there are tortious elements justifying an award of punitive damages depends first on whether there is proof of bad faith and next whether the proof is sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'"

7

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Bad faith cannot be proven just on the basis of negligence or a mistake in judgment. *Blue Cross and Blue Shield of Kentucky, Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. 1985).

Here, the Defendant argues that Westfield never denied that an actual claim existed, and states that the only dispute between the parties goes to the amount in question, which they assert does not constitute bad faith. Westfield further argues that it reasonably sought out proper estimates prepared by Georgie Boy's, agreed to use the appraisal method to settle the dispute, and helped to set up Adams in getting his car analyzed for purposes of the claim, all of which Westfield claims goes counter to a showing of bad faith under KUCSPA.

The Plaintiffs counter the arguments put forth by Westfield in their response to the motion for summary judgment. Adams offers the case of *Farmland Mutual Insurance Company v. Johnson*, asserting that Westfield, like the insurance company in *Farmland*, took a "one offer" stand in violation of the KUCSPA. The Kentucky Supreme Court determined:

> Farmland's position thus reflects an erroneous interpretation of the "fairly debatable" language. Although matters regarding investigation and payment of a claim may be "fairly debatable," an insurer is not thereby relieved from its duty to comply with the mandates of the KUCSPA. Although there may be differing opinions as to the value of the loss and as to the merits of replacing or repairing the damaged structure, an insurance company still is obligated under the KUCSPA to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner. In other words, although elements of a claim may be "fairly debatable," an insurer must debate the matter fairly. As a result, Farmland was not entitled to dismissal of the bad faith claim as a matter of law...coming up with an amount that is within the range of possibility is not an absolute defense to a bad faith case. The carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. It cannot lowball claims or delay claims

> hoping that the insured will settle for less. Equal consideration of the insured
> requires more than that. The court of appeals therefore erred in concluding that
> fair debatability is both the beginning and the end of the analysis.

*Farmland Mutual Insurance Company v. Johnson*, 36 S.W.3d 368, 376 (2000).  The Plaintiffs argue that this holding applied to the facts of the instant matter could lead to a jury finding that Westfield violated the KUCSPA by not acting in a reasonable manner in the course of their investigation.  Adams notes that Cox at one point attempted to defraud the insurance company of the other party involved in the accident by sending a letter to State Farm Insurance telling them that Westfield had paid Adams' $40,000.00 claim, and therefore demanded repayment from State Farm in return for the payment, although no such payment ever took place.  Further, Adams points out that a factual dispute exists as to whether or not Cox made an offer to Adams following the first estimate.  Additionally, Adams challenges the qualifications of the "damage specialists" assigned to his case by Westfield, including the specifics of the investigation conducted by Westfield agent Frye in regards to some potential improprieties on his part in misrepresenting the condition of the RV.  Lastly, Adams argues that the eventual amount offered to settle the claim was substantially lower than the first estimate and further estimates procured by the Plaintiffs, and the lack of an explanation as to why Cox ignored the subsequent estimates of $58,000 and $61,000, respectively, demonstrates a potential issue concerning the reasonableness of Westfield's investigation.

   Though Westfield would argue that only a dispute exists as to the damage caused to the RV and that lead to the discrepancies in regards to the amount tendered as well as the course of the investigation, that dispute, combined with other questions brought forth by the Plaintiffs show an existence of a material disagreement as to pertinent facts of the case.  These

contradictions between the parties require that the claim go forward to the finder of fact to determine whether or not Westfield violated KUCSPA.  In addition, though the Defendant offers case law to support their position to dismiss the KUCSPA claim, their arguments tend to refute a general bad faith claim, but not a claim under KUCSPA because as the Kentucky Supreme Court held in *Farmland Mutual*:

> Although matters regarding investigation and payment of a claim may be "fairly debatable," an insurer is not thereby relieved from its duty to comply with the mandates of the KUCSPA. Although there may be differing opinions as to the value of the loss and as to the merits of replacing or repairing the damaged structure, an insurance company still is obligated under the KUCSPA to investigate, negotiate, and attempt to settle the claim in a fair and *reasonable manner*.

*Farmland Mutual Insurance Co.*, 36 S.W.3d at 376 (emphasis added).  The importance of conducting a reasonable investigation when looking into KUCSPA matters was also emphasized in the Kentucky Supreme Court Case of *Motorist Mutual Ins. Co v. Glass*, where the Court held:

> The [K]UCSPA does not require that a claim be evaluated, or that it be evaluated correctly. It only requires *that payment of a claim not be refused without conducting a reasonable investigation based on all available information, KRS 304.12-230(4), and that a good faith attempt be made to effectuate a prompt, fair and equitable settlement*, KRS 304.12.230(6). (emphasis added).

*Motorist Mutual Ins. Co v. Glass*, 996 SW2d 437, 454 (Ky. 1997).  At this time, based upon the memoranda of the parties, genuine issues of material fact exist as to whether or not Westfield conducted a reasonable investigation.  In looking at the facts mentioned *supra*, especially the discrepancies in reaching the estimates, the issues as to how the agents examined the RV, as well as differing testimony as to whether the initial offer of $48,000 was ever made, and taking those facts in a light most favorable to the non-moving party, in this case Adams, it appears that questions remain as to whether or not the conduct of Westfield during the course of the investigation was reasonable and whether Westfield used good faith in attempting to settle the

claim with Adams. This of course can best be examined at the close of all the evidence.

Therefore, this Court finds that a dispute of material fact exists as to the KUCSPA claim brought forth by the Plaintiffs, and that the claim should go before the finder of fact.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

An appropriate order shall issue.